# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| WILLIAM D. HAMBY, JR. #135146, | ) ) ) | |
| Plaintiff, | ) ) | No. 3:17-cv-01480 |
| | ) | CHIEF JUDGE CRENSHAW |
| v. | ) ) | |
| TONY PARKER, *et al.*, | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

William D. Hamby, Jr., an inmate of the Morgan County Correctional Complex (MCCX) in Wartburg, Tennessee, brings this pro se, in forma pauperis action under 42 U.S.C. § 1983 against Tony Parker, Lynndy Houston-Fagan, Dr. f/n/u Mock, Centurion Corp., and Corizon Corp., alleging violations of the Plaintiff's federal constitutional rights. (Doc. No. 1). The Plaintiff has submitted a motion for preliminary injunction (Doc. No. 4), a motion to ascertain status of case (Doc. No. 5), and a motion to add defendant to suit. (Doc. No. 6).

The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I. Motion to Amend

The Plaintiff has filed a "motion add defendant to the suit." (Doc. No. 6). Rule 15(a) (2) of the Federal Rules of Civil Procedure states that leave to amend should be freely given "when justice so requires." In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. Brumbalough v. Camelot Care Ctrs., Inc., 427 F.3d 996, 1001 (6th Cir. 2005).

The proposed amendment seeks to add a sixth Defendant to this action, Nurse f/n/u Shepard in her individual capacity only. (Doc. No. 6). The Plaintiff alleges that Shepard, who works at MCCX, refuses to provide the Plaintiff with his neuropathy and Hepatitis C medication, his cane, and a "chrono to cuff" the Plaintiff in the front instead of the back "since [the Plaintiff] walk[s] out of cell cuffed in back and [he] is in pain already from injuries." (Id. at 2). The Plaintiff further alleges that Shepard's denials are based on the Plaintiff's race. (Id.)

There appears to be no undue prejudice to the opposing party by permitting the Plaintiff to amend his complaint at this time; no Defendants have been served. With regard to the consideration of futility of an amendment, the law is well settled that the Eighth Amendment to the United States Constitution requires that inmates be provided with reasonably adequate food, clothing, shelter, sanitation, recreation, and medical care. See Grubbs v. Bradley, 552 F. Supp. 1052, 1119-24 (M.D. Tenn. 1982). The failure to provide such necessities is a violation of an inmate's right to be free from cruel and unusual punishment. See Bellamy v. Bradley, 729 F.2d 416, 419 (6th Cir. 1984). The United States Supreme Court has held that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Brooks v. Celeste, 39 F.3d 125, 127 (6th Cir. 1994). The Court finds that the Plaintiff's proposed amendment is not futile; therefore, the Plaintiff's motion to amend (Doc. No. 6) will be granted, and f/n/u Shepard will be added as a Defendant in her individual capacity to this action.

## II. PLRA Screening Standard

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or

seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," id. § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). Id. § 1915A(b).

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." Tackett v. M & G Polymers, USA, LLC, 561F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." McDonald v. Hall, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

**III. Section 1983 Standard**

The Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983. Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under § 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Tahfs v. Proctor,* 316 F.3d 584, 590 (6th Cir. 2003); 42 U.S.C. § 1983.

**IV. Alleged Facts**

The complaint alleges that the Plaintiff suffers from "severe neuropathy" and, since his arrival to the MCCX, Dr. Mock, "the doctor who is under contract by Centurion," has not provided the Plaintiff with his medication for neuropathy and refuses to give him access to any medical treatment for neuropathy. (Doc. No. 1 at 1). The complaint alleges that Houston-Fagan, who also works at MCCX, "refuses to assist in [his] medical needs as well" and that both Defendants "allow[] the denial of [the plaintiff's] meds on purpose, without care . . . and they all do not correct the problem, or place [the plaintiff] where [he] could get medical care." (Id. at 1-2). According to the Plaintiff, Mock and Houston-Fagan provide white inmates with neuropathy medication but not the Plaintiff, reflecting "racial bias." (Id. at 2). The Plaintiff states that he is in "constant pain." (Id.)

The complaint further alleges that Centurion, the corporation that employs Dr. Mock, Parker, "his [Mock's] boss," and Houston-Fagan "fail/refuse to reprimand Dr. Mock of his medical neglect. All the defendants choose to abuse power, of their own will and volition, by individually denying [the plaintiff] help . . . ." (Id.)

As to Defendant f/n/u Shepard, a MCCX nurse, the complaint alleges that she has denied the

4

Plaintiff not only his neuropathy medication but also his medication for Hepatitis C, his cane, and a "chrono to cuff" the Plaintiff in the front instead of the back "since [the Plaintiff] walk[s] out of cell cuffed in back and [he] is in pain already from injuries." (Id. at 2).

The Plaintiff attached to his complaint an inmate grievance dated September 22, 2017, in which he describes his problem as "denied access to any neuropathy meds, and Hep-C meds, by Dr. Mock, due to my race of non-white." (Id. at 4). The grievance further states: "[H]e [Dr. Mock] and Ms. Fagan give help to whites but not me . . . [A]s records show, I am a neuropathy sufferer and Hep-C infected (since 2006)." The grievance form contains the response by a chairperson (whose signature the Court cannot read) dated October 18, 2017, stating simply:

> Summary of Supervisor's Response/Evidence:   Denied.
> Chairperson's Response and Reason(s):   Denied.

(Id.)

**V.   Analysis**

First, the complaint alleges that the Plaintiff "arrived at MCCX prison by order of Commissioner (TDOC) Tony Parker, against [the Plaintiff's] will." (Doc. No. 1 at 1). However, prisoners have no constitutional right to be incarcerated in a particular prison or to be held in a specific security classification. Watkins v. Curtin, No. 1:05-cv-267, 2005 WL 1189602, at *2 (W.D. Mich. May 19, 2005) (citing Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); Meachum v. Fano, 427 U.S. 215, 244 (1976)). Thus, to the extent that the complaint alleges claims based on the Plaintiff's placement at MCCX or a particular inmate classification within MCCX, the complaint fails to state federal claims upon which relief can be granted.

Next, the complaint names Corizon Corporation as a Defendant to this action. However,

other than being listed as a Defendant, Corizon Corporation in not mentioned in the narrative of the complaint or amendments to the complaint. (See Doc. No. at 1 at 1-2, Doc. No. 6 at 1-2). A plaintiff must identify the right or privilege that was violated and the role of the defendant in the alleged violation. Miller v. Calhoun Cnty., 408 F.3d 803, 827 n.3 (6th Cir. 2005); Dunn v. Tennessee, 697 F.2d 121, 128 (6th Cir. 1982). Because the Plaintiff does not identify the role played by Corizon Corporation in the events set forth in the complaint, the Plaintiff has not established a basis for imposing individual liability on Corizon Corporation. See Rizzo v. Goode, 423 U.S. 362, 371 (1976); Heyerman v. County of Calhoun, 680 F.3d 642, 647 (6th Cir. 2012). Thus, the Plaintiff's claims against Corizon Corporation must be dismissed.

Finally, the complaint alleges that Defendants Parker, Centurion Corporation, Dr. Moody, Houston-Fagan, and nurse Shepard's failure to provide the Plaintiff with appropriate treatment and medication for his neuropathy and Hepatitis-C violated his constitutional rights. The Eighth Amendment to the United States Constitution requires that inmates be provided with reasonably adequate food, clothing, shelter, sanitation, recreation, and medical care. See Grubbs v. Bradley, 552 F. Supp. 1052, 1119-24 (M.D. Tenn. 1982). The failure to provide such necessities is a violation of an inmate's right to be free from cruel and unusual punishment. See Bellamy v. Bradley, 729 F.2d 416, 419 (6th Cir. 1984). The United States Supreme Court has held that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Brooks v. Celeste, 39 F.3d 125, 127 (6th Cir. 1994).

A claim of deliberate indifference to a prisoner's medical needs under the Eighth Amendment has both an objective and subjective component. Rouster v. Cnty. of Saginaw, 749 F.3d

437, 446 (6th Cir. 2014). A plaintiff satisfies the objective component by alleging that the prisoner had a medical need that was "sufficiently serious." Id. (quoting Farmer, 511 U.S. at 834). A plaintiff satisfies the subjective component "by alleging facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." Id.

Complaints of malpractice or allegations of negligence are insufficient to entitle plaintiff to relief. Estelle, 429 U.S. at 105-06. A prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation. Id. at 107. Further, where a prisoner has received some medical attention, but disputes the adequacy of that treatment, the federal courts are reluctant to second-guess the medical judgments of prison officials and constitutionalize claims that sound in state tort law. Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Finally, to set forth a viable claim for the denial of medical care, the plaintiff must argue that his health suffered as a consequence of such alleged denial. See Thaddeus-X v. Blatter, 175 F.3d 378, 401 (6th Cir. 1999).

The Court assumes for purposes of the required PLRA screening that neuropathy and Hepatitis C constitute a sufficiently serious medical need. See Rouster, 749 F.3d at 446. As to the Defendants' state of mind, the complaint alleges that the individual Defendants knew of the Plaintiff's conditions and pain and, "on purpose, without care," denied the Plaintiff treatment and medication for his conditions. (Doc. No. 1 at 2). The complaint further alleges that Dr. Mock, Houston-Fagan, and Shepard denied the Plaintiff appropriate medical care based on his race.

The Court finds that these allegations, "if true, would show that the official[s] being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that [they]id in fact

7

draw the inference, and that [they] then disregarded that risk." Id. Consequently, the Court finds that the complaint sets forth non-frivolous Eighth Amendment claims against Dr. Moody, Houston-Fagan, and Shepard based on their failure to provide the Plaintiff with appropriate care and medication for his neuropathy and Hepatitis C.

As to the Plaintiff's Eighth Amendment § 1983 claim based on Defendants Moody, Houston-Fagan, and Shepard's treatment of the Plaintiff's Hepatitis C, it appears that the Plaintiff may be included in a present class action: Charles Graham v. Russell L. Davis, No. 3:16-cv-1954 (M.D. Tenn.)(Crenshaw, Chief Judge, presiding). By Order entered on May 4, 2017, the Court certified the following class:

> All persons currently incarcerated in any facility under the supervision or control of the Tennessee Department of Corrections or persons incarcerated in a public or privately owned facility for whom the Tennessee Department of Corrections has ultimate responsibility for their medical care and who have at least 90 days or more remaining to serve on their sentences and are either currently diagnosed with Hepatitis C infection or are determined to have Hepatitis C after a screening test has been administered by the Department of Corrections.

Graham, (Docket No. 33). The Court will mail the Plaintiff a copy of pertinent orders from the Graham case so that the Plaintiff may determine whether he is already a member of the class defined in Docket No. 33 of the Graham case.

Centurion Corporation is the entity presumably responsible for providing medical care to prisoners at MCCX. Centurion Corporation is a state actor under § 1983 because its employees provide medical care to prisoners at MCCX. See West v. Atkins, 487 U.S. 42, 54 (1988); McCullum v. Tepe, 693 F.3d 696, 699–700 (6th Cir. 2012). The law is settled that actions brought against state actors cannot be maintained under § 1983 on a theory of respondeat superior, see e.g.,

8

Monell v. Dept. of Social Serv's of The City of New York, et al., 436 U.S. 658, 659, 691–95 (1978); Siggers v. Campbell, 652 F.3d 681, 695 (6th Cir. 2011) (citing Taylor v. Michigan Dep't of Corrections, 69 F.3d 76, 80–81 (6th Cir.1995)), unless the state actor was directly involved in the alleged violations of the plaintiff's constitutional rights, see Colvin v. Caruso, 605 F.3d 282, 292 (6th Cir.2010) (internal citations and quotation marks omitted). For vicarious liability to attach here, Centurion must have "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending [party]." Colvin, 605 F.3d at 292 (citing Cardinal v. Metrish, 564 F.3d 794, 802–03 (6th Cir. 2009)).

The complaint does not allege that Centurion was directly responsible for any of the alleged acts and/or omissions of its doctors, nurses, or staff who alleged failed to treat the Plaintiff's medical needs, nor can any such claims be liberally construed against Centurion. Neither does the complaint allege that Centurion acted pursuant to a corporate policy or custom that violated the Plaintiff's constitutional rights. Instead, the complaint alleges that Centurion "is the corporation who is contracted to hire Dr. Mock" and that Centurion "fail[s]/refuse[s] to reprimand Dr. Mock . . . ." (Doc. No. 1 at 2). However, because the complaint fails to allege any direct responsibility by Centurion, or that Centurion acted pursuant to a corporate policy or custom that violated the Plaintiff's constitutional rights, Centurion is not liable to the Plaintiff under the doctrine of respondeat superior regardless of what Centurion's employees may or may not have done. Thus, the Court will dismiss the claims against Centurion for failure to state claims upon which relief can be granted.

As to Defendant Parker, Commissioner of the Tennessee Department of Correction, the Plaintiff alleges that he is Dr. Mock's boss and he has failed to reprimand Dr. Mock for his denial

of appropriate medical care to the Plaintiff. (Doc. No 1 at 2). As discussed above, actions brought against state actors such as Parker cannot be maintained under § 1983 on a theory of respondeat superior, Monell, 436 U.S. at 659, 691–95, unless the state actor was directly involved in the alleged violations of the plaintiff's constitutional rights, Colvin, 605 F.3d at 292. For vicarious liability to attach here, Parker must have "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending [party]." Colvin, 605 F.3d at 292 (citation omitted).

As with Centurion, the complaint alleges that Parker is Dr. Mock's boss and Parker "fail[s]/refuse[s] to reprimand Dr. Mock . . . ." (Doc. No. 1 at 2). However, because the complaint fails to allege any direct responsibility by Parker, or that Parker acted pursuant to a policy or custom that violated the Plaintiff's constitutional rights, Parker is not liable to the Plaintiff under the doctrine of respondeat superior regardless of what Parker's employees may or may not have done.[1] Thus, the Court will dismiss any Eighth Amendment claims against Parker for failure to state claims upon which relief can be granted.

Finally, the Court must also consider the complaint's allegation that the individual Defendants' actions were based on the Plaintiff's race. 42 U.S.C. § 1981 provides in pertinent part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.

To state a claim under Section 1981, a plaintiff must allege (1) membership in a racial

---

[1] In any event, it is unclear from the allegations of the complaint whether Dr. Mock is an employee of Parker.

10

minority; (2) that defendants intended to discriminate on the basis of race; and, (3) discrimination concerning one of the activities enumerated in § 1981. King v. City of Eastpointe, 86 Fed. Appx. 790, 800 (6th Cir. 2003). These allegations should be supported by specific acts, practices, or policies which resulted in the alleged discrimination. Id.

Essentially, the complaint commits to writing the Plaintiff's belief that he has not been treated the same as white inmates with respect to his medical treatment; the reason the Plaintiff believes the Defendants have not treated him equally is because of the Plaintiff's race. However, the complaint does not include any specific allegations that Plaintiff was discriminated against concerning one of the activities enumerated in Section 1981 because of his race. Accordingly, the Plaintiff's allegations, if construed as claims brought pursuant to 42 U.S.C. § 1981, must be dismissed for failure to state claims upon which relief can be granted.

In addition to § 1981, "[p]risoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Henry v. Metro. Sewer Dist., 922 F.2d 332, 335 (6th Cir. 1990). "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." Henry, 922 F.2d at 335. The Supreme Court has instructed that "[w]here the claim is invidious discrimination in contravention of the First and Fifth Amendments, our decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purposes." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Thus, "purposeful discrimination requires more than intent as volition or intent as awareness of consequences. It instead involves a decisionmaker's undertaking a course of action because of, not merely in spite of [the action's] adverse effects upon an

identifiable group." Id. at 676–77 (internal punctuation and citations omitted).

Here, the complaint alleges that Defendants treat inmates of different races differently with respect to their medical treatment. Specifically, the complaint alleges that the Plaintiff is non-white, and Defendants Mock, Houston-Fagan, and Shepard refuse to give the Plaintiff medical treatment and medication for his documented neuropathy but "give neuropathy meds to white inmates. Defendants are white and reflect racial bias by not ordering me neuropathy meds but doing so for the white inmates." (Doc. No. 1 at 1-2, 4). The complaint further alleges that these Defendants "allow[] the denial of [the plaintiff's] meds on purpose, without care . . . ." (Id. at 1-2). The Court finds that these allegations state a non-frivolous, colorable Equal Protection Claim under § 1983 against Mock, Houston-Fagan, and Shepard in their individual capacities. Of course, it is unclear at this stage of the proceedings whether the Plaintiff ultimately can prove his allegations of discriminatory intent, but the Court finds that these claims survive the required PLRA screening and should proceed for further development.

## VI. Conclusion

For the reasons stated above, the Plaintiff's motion to amend will be granted. Further, the Court has reviewed the complaint as amended pursuant to the PLRA and finds that the complaint states colorable Eighth Amendment deliberate indifference to serious medical needs claims under § 1983 against Dr. Moody, Houston-Fagan, and Shepard in their individual capacities only. 28 U.S.C. § 1915A. In addition, the complaint states colorable Fourteenth Amendment Equal Protection claims under § 1983 against Dr. Moody, Houston-Fagan, and Shepard in their individual capacities. These claims survive the required PLRA screening and will proceed to further development.

The Plaintiff's remaining claims against all other Defendants fail to state claims upon which relief can be granted, and those claims will be dismissed.

The Plaintiff may be a member of a pending class action in the court: <u>Charles Graham v. Russell L. Davis</u>, No. 3:16-cv-1954 (M.D. Tenn.). However, even if the Plaintiff is a member of the <u>Graham</u> class, the Plaintiff may elect to opt out of the class and instead proceed on his own in this action. Should the Plaintiff not meet the requirements of the <u>Graham</u> class, or should the Plaintiff opt out of the <u>Graham</u> class, the Plaintiff may proceed on his Eighth Amendment Hepatitis C claim in this case.

An appropriate Order will be entered.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE